```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA          :     INDICTMENT

          - v. -                  :     07 Cr.

VINCENT SETTEDUCATE,              :     07 CRIM 1073
     a/k/a "Vincent Sette,"       :

          Defendant.              :
                                  :
------------------------------------x
```

COUNT ONE
(Securities Fraud)

The Grand Jury charges:

Background

1. At all times relevant to this Indictment, Great American Technolgies, Inc. (hereinafter, "GAT"), a company incorporated in New York and headquartered in New Jersey, was a company purportedly dedicated to identifying and acquiring undercapitalized technologies. From at least in or about May 2002 up to and including the present, GAT issued and sold securities ("the GAT Securities") directly to investors, without first registering those securities with the United States Securities & Exchange Commission (the "SEC"). The sale of such securities provided most, if not all, of GAT's financing.

2. At all times relevant to this Indictment, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, was a shareholder in GAT and held himself out as its "Director of Sales and Marketing and Technology Development." In truth and in fact,

SETTEDUCATE ran GAT's daily operations, notwithstanding purportedly more senior executive positions held by others.

### The Scheme To Defraud

3. From at least in or about May 2002 through in or about November 2007, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, engaged in a fraudulent scheme to raise funds from investors based on, among other things, false and inflated claims concerning various technologies purportedly owned by GAT. In particular, GAT represented to investors that GAT owned rights to two technologies: one which purportedly delivered voice over infrared light to an earpiece, a product which was dubbed the "Ultimate Light Communicator," or "ULC"; and one which allowed users to have their electronic mail ("e-mail") read to them over a telephone, a product which was dubbed "MailCall." In promoting these two technologies and their commercial potential, SETTEDUCATE disseminated materially false and misleading offering materials and made false and misleading oral representations and material omissions to purchasers and potential purchasers of the GAT Securities. Between May 2002 and February 2007, SETTEDUCATE and others known and unknown sold stock valued at over $2.3 million to over 100 investors throughout the United States.

### The Offering Memorandum and Solicitation of Investors

4. GAT's initial funding was raised by selling GAT Securities for $.50 per share to so-called "friends and family."

In or about 2005, in connection with a private placement offering made on or about February 1, 2005, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, and others known and unknown, prepared a Confidential Private Placement Memorandum (hereinafter, "the Offering Memorandum"). The Offering Memorandum represented that approximately $600,000 had been raised from this so-called "'friends and family' round" of financing. The Offering Memorandum further represented that GAT sought to raise an additional $500,000 through the associated private placement.

     5.    In or about 2005, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, and others known and unknown, disseminated the Offering Memorandum to investors and potential investors. The Offering Memorandum was false and misleading because, among other things, it represented the following:

         a.    The Offering Memorandum stated that the existing MailCall service had the operating capacity to serve up to 10,000 users, and that funds from the offering would be used to expand the operating capacity to 500,000 users. According to the Offering Memorandum, $225,000 of the $500,000 to be raised would be spent on expanding the MailCall operating system. However, as of March 2006, MailCall only had approximately a few dozen paying customers, and its existing capacity did not permit more than a few dozen users to use the system at one time. In

- 3 -

truth and fact, rather than spending the funds necessary to expand MailCall's operating capacity, SETTEDUCATE misappropriated a substantial portion of the proceeds raised from the private placement for his own enrichment and the enrichment of others.

        b.    The Offering Memorandum represented that $100,000 of the $500,000 to be raised would be spent on "general and administrative expenses and general working capital," including legal fees, auditing fees, the cost of the offering, and SETTEDUCATE's salary.  If the minimum required offering of $10,000 was raised, according to the Offering Memorandum, no money would be spent on these expenses.  In truth and in fact, as the defendant well knew, SETTEDUCATE intended to and did spend more than this amount on his salary and these expenses.  From February 1, 2005, through the end of that year, more than $176,000 of offering proceeds were used to pay SETTEDUCATE's salary and other such expenses.

        c.    The Offering Memorandum projected that GAT's net income in the year beginning February 1, 2005 would be $3,363,750; in the following year, $9,902,750; in the third year, $13,996,450; and in the fifth year, $20,294,300.  In truth and in fact, as the defendant well knew, these projections lacked any basis in fact, because GAT's business operations were minimal, and GAT had no business history or prospects upon which any such projection could reasonably be based.

    d. The Offering Memorandum represented that an individual with a technology background who had served as an officer of the New Jersey Institute of Technology Enterprise Development Center had joined GAT in August 2004 as chief financial officer and vice president of business development. In truth and in fact, this individual did not work for GAT at the time or subsequently.

    e. The Offering Memorandum represented that SETTEDUCATE's employment history consisted of over twenty years of experience, "starting in 1983, when he began assisting Novell Networks." In truth and in fact, SETTEDUCATE never worked for Novell Networks.

### The February 1, 2006 Letter to Shareholders

    6. In furtherance of the scheme, on or about February 1, 2006, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, sent a letter to GAT shareholders ("the Shareholders Letter") in an effort to reassure shareholders and raise additional funding. In the Shareholders Letter SETTEDUCATE stated that "additional investment is important at this time to allow GAT to complete all our commitment and contracts" and therefore "[a] final round of capital would allow us to keep moving forward with all our opportunities and insure that the original investment is well protected." The Shareholders Letter was false and misleading because, among other things, it

represented the following:

  a. In the Shareholders Letter, SETTEDUCATE falsely claimed that GAT had recently signed contracts with Callwave, the National Federal of the Blind, the Mortgage Training Institute, Denver Business Journals, the Denver Chamber of Commerce, and the Colorado Bar Association. In truth and in fact, no such contracts had been signed.

  b. In the Shareholders Letter, SETTEDUCATE further represented that GAT had "gone to revenues" in the fourth quarter of 2005 and was going to be profitable in 2006. In truth and in fact, as the defendant well knew, there was no factual basis for SETTEDUCATE's statements.

  c. In the Shareholders Letter, SETTEDUCATE compared GAT's record with that of Novell Networks, stating that the uncertainties of a start-up company were "[n]othing new for me, the first year with Novell we made zero sales, look what they accomplished after that." In truth and in fact, SETTEDUCATE never worked for Novell Networks.

Oral Misrepresentations

  7. In or about May 2002, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, solicited two individuals ("V-1" and "V-2") to make investments in GAT Securities by making false representations, including the following:

  a. SETTEDUCATE stated that GAT was in the

process of preparing for an initial public offering of stock ("IPO"). In truth and in fact, GAT had done little or nothing to prepare for an IPO: GAT had not filed the necessary preparatory paperwork with the SEC, nor had it retained an investment bank to advise and assist GAT with an IPO.

        8.    In or about June 2005, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, solicited an investor in GAT ("V-3") to make additional investments by making several false representations, including the following:

        a.    SETTEDUCATE told V-3 falsely that MailCall currently had 550 corporate beta testers from large corporations and government entities.

        b.    SETTEDUCATE told V-3 that SETTEDUCATE needed to raise $300,000 to hire and train a sales force because he himself was overwhelmed by the customer orders. In truth and in fact, there was no such overwhelming volume of orders that would warrant spending $300,000 to hire and train a sales force.

        c.    SETTEDUCATE falsely told V-3 that SETTEDUCATE had been one of the first employees at Novell Networks, and that SETTEDUCATE expected MailCall to become a billion-dollar company.

### The Misappropriation of the Proceeds

        9.    From in or about May 2004 through in or about February 2007, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, received from the investment proceeds over $700,000 in

checks payable to him or endorsed by him. In addition, over $200,000 of GAT funds were disbursed in ATM card withdrawals and debit card charges, an amount which included numerous charges at hotels, casinos, and restaurants.

<u>Statutory Allegation</u>

10.  From at least in or about May 2002, through in or about November 2007, in the Southern District of New York and elsewhere, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, unlawfully, willfully, and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making and causing others to make untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, namely purchasers of GAT Securities.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

<u>COUNT TWO</u>
(Mail Fraud)

The Grand Jury further charges:

11.  The allegations contained in paragraphs 1 through 9 are repeated and realleged as if fully stated herein.

12.  From at least in or about May 2002, through in or about November 2007, in the Southern District of New York and elsewhere, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice, and attempting so to do, did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and did deposit and cause to be deposited a matter and thing to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matter and thing, and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, such matter and thing, to wit, SETTEDUCATE caused to be sent and delivered by mail and such carriers materials used to defraud purchasers of GAT Securities, including the February 1, 2006 Shareholders Letter, and SETTEDUCATE received by mail and such carriers checks from investors purchasing GAT Securities,

including from investors in Rockland County, New York.

(Title 18, United States Code, Sections 1341 and 2.)

COUNT THREE
(Criminal Contempt)

The Grand Jury further charges:

13. The allegations contained in paragraphs 1 through 9 are repeated and realleged as if fully stated herein.

14. From at least in or about May 2002, through in or about November 2007, in the Southern District of New York and elsewhere, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, unlawfully, willfully, and knowingly, did disobey and resist a lawful writ, process, order, rule, decree, and command by a court of the United States, to wit, by engaging in the conduct set forth in Count One, SETTEDUCATE disobeyed an order of the United States District Court for the Southern District of New York that was entered on or about November 12, 1998, in Securities & Exchange Commission v. Vincent Setteducate, 97 Civ. 8472 (SAS), an order that permanently enjoined SETTEDUCATE from violating Section 17(a) of the Securities Act of 1933 ("the Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), and Rule 10b-5 of the Exchange Act.

(Title 18, United States Code, Section 401(3).)

## FORFEITURE ALLEGATION

15.  As a result of committing the securities and mail fraud offenses alleged in Counts One and Two of this Indictment, VINCENT SETTEDUCATE, a/k/a "Vincent Sette," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of money equal to $2.3 million in United States currency, representing the amount of proceeds obtained as a result of the securities and mail fraud offenses alleged in this Indictment.

### Substitute Asset Provision

16.  If any of the forfeitable property, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461)

_____        _____
FOREPERSON                              MICHAEL J. GARCIA
                                        United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**VINCENT SETTEDUCATE,
a/k/a "Vincent Sette",**

Defendant.

---

**INDICTMENT**

07 Cr.

(Title 15, United States Code,
Sections 78j(b) & 78ff; Title 17, Code of
Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Sections
1341, 2, and 401(3))

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

---

0293